UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION AT COLUMBUS

| | |
|---|---|
| ALEX PENLAND, | : Case No. 2:24-cv-676 |
| Plaintiff, | : |
| vs. | : Judge Michael H. Watson |
| | : Magistrate Judge Kimberly A. Jolson |
| LIEUTENANT FLOWERS, *et al.*, | : |
| Defendants. | : |

**OPINION & ORDER**

Plaintiff's Motion to Compel the Deposition of Maragaret Moore is before the Court. (Doc. 77). For the following reasons, the Motion is **GRANTED in part**. Plaintiff is permitted to depose Maragaret Moore for up to three hours.

**I.   BACKGROUND**

Alex Penland joins the ranks of numerous incarcerated plaintiffs in Ohio challenging the Ohio Department of Rehabilitation and Corrections' mail policies. As told by his operative, Second Amended Complaint, Plaintiff was incarcerated at Lebanon Correction Institution ("LeCI") from March 2020 until April 2022; at Madison Correctional Institution ("MaCI") from April 2022 until January 2024; and then at Mansfield Correctional Institution ("MCI") until recently. (Doc. 43 (amended complaint); Doc. 27 at 1)). He initially brought this action against LeCI mailroom supervisor Robert Flowers, LeCI correctional officer Matthew Johnson, MaCI institutional inspector Zachary Gould, Ohio Department of Rehabilitation and Correction ("ODRC") director Annette Chamber-Smith; and two mailroom-employee John Does (one at MaCI and one at MCI). (*See generally* Doc. 14). Plaintiff subsequently identified John Doe # 1 as Lieutenant Francis and John Doe #2 as Jade Wojciechowski. (Doc. 33).

Plaintiff's claims generally stem from these Defendants' collective treatment of his mail under a policy ODRC implemented in 2022, 75-MAL-03. (*See generally* Doc. 43). As this Court previously summarized, "[t]he policy requires senders of 'legal mail,' including courts, attorneys, and legal organizations, to obtain a 'control number' from the prisoner's correctional institution. If the sender does not, the prison may treat the mail as 'regular mail' and copy and inspect it outside of the prisoner's presence." *Warner v. Chambers-Smith*, No. 2:24-CV-1565, 2025 WL 1904537, at *1 (S.D. Ohio July 10, 2025); *see* Ohio Admin. Code 5120-9-17(B)(2).

Following the policy's implementation, says Plaintiff, legal mail from this Court, the Hamilton County Court of Common Pleas, and the Sixth Circuit Court of Appeals faced the same treatment at the hands of Defendants: the mail was opened, read, and copied outside of his presence. (Doc. 43 at ¶¶ 27–28, 36–43, 58, 60, 64–65; *see also id.* at ¶¶ 21–24 (alleging that even before the policy's implementation, Plaintiff's legal mail from the Ohio Court of Claims was opened, censored, inspected, and copied outside of his presence by Defendants Flowers and Johnson)). Plaintiff further alleges various Defendants destroyed some of his mail. (*Id.* at ¶¶ 25, 36, 62). Still more, he says he never received certain legal mail from the Hamilton County Court of Common Pleas and the Sixth Circuit Court of Appeals. (*Id.* at ¶¶ 61, 63). Plaintiff submits that not receiving the mail contributed to his failure to timely appeal the Hamilton County Court of Common Pleas' decision denying his post-conviction petition. (*Id.* at ¶¶ 61–65). Plaintiff says he filed grievances with Defendants Gould, Flowers, and Wojciechowski about the treatment of his legal mail to no avail. (*Id.* at ¶¶ 26, 27, 34, 45, 75; *see also* Doc. 43-1 at 1–7).

Against all Defendants, Plaintiff alleges violations of his First Amendment right to receive legal mail, his Fourteenth Amendment rights to substantive and procedural due process and equal protection, and 42 U.S.C. § 1983 for civil conspiracy. (Doc. 43 at ¶¶ 82–121). As relief, he seeks

a declaratory judgment that Defendants violated his rights, an injunction stopping ODRC from enforcing its legal mail policy, and compensatory and punitive damages. (*Id.* at 31).

Over the last several months, the parties have exchanged discovery in earnest. (*See, e.g.*, 68, 70). More recently, the parties notified the Court that a dispute arose over Plaintiff's desire to depose Margaret Moore, Assistant Chief Counsel for ODRC. (Docs. 72, 75). After confirming the parties were at impasse, the Court allowed Plaintiff to file a Motion to Compel. Defendants Chambers-Smith, Flowers, Johnson, Gould, and Wojciechowski oppose the Motion. (Doc. 78). As does Interested Party the State of Ohio. (*Id.*). According to Defendants, the State of Ohio may appear as an interested party under Ohio law to protect the interest of the State even if no request for appearance has been made. (*Id.* at 1 n.1). Here, they say the State interest exists because ODRC opposes Attorney Moore's deposition. (*Id.*).

This matter is ripe for review. (Docs. 77, 78, 79).

## II.  STANDARD

Three federal rules matter here. Rule 26(b) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Rule 30 of the Federal Rules of Civil Procedure provides that "[a] party may, by oral questions, depose any person, including a party without leave of court except as provided in 30(a)(2)." Fed. R. Civ. P. 30(a)(1); *see also* Fed. R. Civ. P. 45(a) (allowing parties to command such an appearance via subpoena). Finally, Rule 37 allows for a party seeking discovery to move for an order to compel that discovery. Fed. R. Civ. P. 37(a)(1).

"The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Gruenbaum v. Werner Enters., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (citation omitted). "While relevancy is broad, 'district courts have discretion to

limit the scope of discovery [when] the information sought is overly broad or would prove unduly burdensome to produce.'" *Plain Local Sch. Dist. Bd. of Educ. v. DeWine*, 335 F.R.D. 115, 119 (N.D. Ohio 2020) (alteration in original) (quoting *Surles ex rel. Johnson v. Greyhound, Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)). At base, "the scope of discovery is within the sound discretion of the trial court." *Stumph v. Spring View Physician Practices, LLC*, No. 3:19-CV-00053-LLK, 2020 WL 68587, at *2 (W.D. Ky. Jan. 7, 2020) (quotation marks and citations omitted).

### III. DISCUSSION

Plaintiff seeks to depose ODRC Assistant Chief Counsel Margaret Moore. (Doc. 77). At the center of this ask is Plaintiff's claim that Defendants failed to treat mail from this Court as legal mail. (*See generally* Doc. 43).

Attorney Moore is senior in-house counsel for ODRC. (Doc. 78 at 9). Further,

> She is responsible for providing strategic legal advice to the Director, Wardens, as well as rank and file officers. In addition, she handles risk identification and mitigation, manages litigation and external counsel, including acting as the primary liaison between ODRC and the Office of the Ohio Attorney General. She also develops and advises on department-wide policies for legal compliance, and ensures legal compliance of programs, policies, regulations, and contracts.

(*Id.*). In spring 2024, Attorney Moore's work included litigating legal mail claims in this Court. (*Id.*). According to Defendants, as part of her duties, she spoke with Clerk of Court Richard W. Nagel about "how to identify mail truly sent from the Southern District [of Ohio]." (*Id.* at 10). Then,

> Attorney Moore drafted and created a mailroom protocol which required ODRC institutions, and its mailrooms, mailroom supervisors, mailroom staff, and institution staff and employees, to treat all mail sent from the United States District Courts, including the Northern District of Ohio and the Southern District of Ohio, and the United States Sixth Circuit Court of Appeals, and the United States Supreme Court ("federal courts") as "legal mail" whether or not it was assigned a control number.

4

(*Id.* at 9–10) (the "Policy Memorandum"). The Policy Memorandum was sent to all ODRC mailroom supervisors and instructed employees on how to identify mail from this Court. (*Id.* at 10). The Policy Memorandum further instructed employees to contact Attorney Moore with any questions. Taking this instruction to heart, Defendant Wojciechowski reached out to Attorney Moore via email in May 2024 "regarding issues she was having with determining how to process [Plaintiff's] mail from the federal courts that did not meet the guidelines promulgated by ODRC." (*Id.* at 13) (the "Email Correspondence"). The individual Defendants subsequently produced both the Policy Memorandum and the Email Correspondence to Plaintiff in discovery.

Now, Plaintiff seeks to question Attorney Moore about her role in these events. Plaintiff argues that Attorney Moore's deposition testimony about the Policy Memorandum, the Email Correspondence, and related topics is relevant and proportional to the needs of the case. (Doc. 77 at 5). Particularly, Plaintiff asserts that Attorney Moore's testimony would address "one of Defendants' main defenses"—that they could open Plaintiff's mail outside of his presence because it looked a certain way. (*Id.*; *see also* Doc. 77 at 11–15 (affidavit of Defendant Wojciechowski discussing how Plaintiff's mail from this Court looked and how it was treated in the mailroom)).

Defendants do not contest that Attorney Moore's testimony is relevant and proportional. (*See generally* Doc. 78 (not addressing either relevance or proportionality); Doc 72 (same)). Nor do they argue that her deposition would be unduly burdensome. (*See generally* Docs. 78, 72). Instead, Defendants ask that the Court bar Attorney Moore's deposition because Defendants expect that Plaintiff's questions will impinge upon the attorney-client privilege and attorney work product doctrine. In the alternative, Defendants ask that Plaintiff be allowed to depose Attorney Moore "only on unprivileged fact work product and opinion work product." (*Id.* at 14).

Up front, the Court notes that the posture of Defendants' opposition is unusual. Neither the Court nor Defendants know what questions Plaintiff intends to ask Attorney Moore. Because

5

of this, in some ways, these issues are not ripe. Still, efficiency weighs in favor of addressing some of Defendants' concerns now, while leaving the door open for future judicial intervention. As such, the Court briefly considers the privileges Defendants claim are at issue.

### A. The Attorney-Client Privilege and Attorney Work Product Doctrine

To begin, the attorney-client privilege exists to promote loyalty and disclosure between attorneys and their clients. *Reed v. Baxter*, 134 F.3d 351, 356 (6th Cir. 1998). Under the privilege,

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived.

*Id.* at 355–56 (citation omitted). Only the client may assert the attorney-client privilege. *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986).

Though "there may be some overlap . . . the work product doctrine 'is distinct from and broader than the attorney-client privilege.'" *Id.* (citing *United States v. Nobles*, 422 U.S. 225, 238 n. 11 (1975)). "[T]he work product doctrine protects any document prepared in anticipation of litigation by or for the attorney." *Id.*; *see also* Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."). Either an attorney or a client may invoke this doctrine. *Antitrust Grand Jury*, 805 F.2d at 163.

In determining whether the anticipation of litigation standard is met, the Sixth Circuit has adopted the "because of" test. *Cooey v. Strickland*, 269 F.R.D. 643, 647 (S.D. Ohio 2010). That inquiry centers on whether documents were "prepared or obtained because of the prospect of litigation[,]" as opposed to those "prepared in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for non-litigation purposes[.]" *Id.* (citing *U.S. v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006)). "Thus, if the item would have been prepared in

6

substantially the same manner, regardless of the anticipated litigation, the doctrine does not apply." *Id.* Additionally, "[t]he work product doctrine . . . does not protect the discovery of underlying facts, including facts concerning the creation of work product or the facts contained within that work product." *Bobalik v. BJ's Rest., Inc.*, No. 3:19-CV-0661-RGJ-LLK, 2020 WL 7241060, at *5 (W.D. Ky. Dec. 9, 2020) (citation omitted).

As for both the attorney-client privilege and the work product doctrine, protections are waived by voluntary disclosure. In the case of the former, the "attorney-client privilege is waived by voluntary disclosure of private communications by an individual or corporation to third parties." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999); *see also N. Am. Rescue Prods., Inc. v. Bound Tree Med., LLC*, No. 2:08-CV-101, 2009 WL 4110889, at *8 (S.D. Ohio Nov. 19, 2009) (finding waiver where documents were purposefully produced, even where the "person making the disclosure was mistaken or unaware of the consequences of producing the document"), *objections overruled*, No. 2:08-CV-101, 2010 WL 1873291 (S.D. Ohio May 10, 2010). And "other than the fact that the initial waiver must be to an 'adversary,'" the Sixth Circuit does not differentiate waiver of work product protections from waiver of attorney-client privilege. *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 306–07 (6th Cir. 2002). Said another way, "[a] party "may waive . . . work-product protection 'by conduct which implies a waiver of the privilege or a consent to disclosure.'" *Cox v. Franklin Cnty. Bd. of Commissioners*, No. 2:18-CV-1631, 2019 WL 6711388, at *4 (S.D. Ohio Dec. 10, 2019) (citations omitted).

While Defendants invoke both doctrines in the alternative, ultimately, the Court concludes that Plaintiff should not be wholly estopped from deposing Ms. Moore based on these principles.

### B. Attorney Moore's Conversation with Mr. Nagel

Plaintiff seeks to question Attorney Moore about her communications with Mr. Nagal prior to developing the Policy Memorandum. (Doc. 77 at 5). Defendants acknowledge that Attorney

7

Moore's communications with Mr. Nagel are not protected by the attorney-client privilege. (Doc. 78 at 10). And though Defendants elsewhere assert that the questions Attorney Moore asked Mr. Nagel are protected (*id.* at 11), the simple fact that Mr. Nagel was not Attorney Moore's client is dispositive. Therefore, the attorney-client privilege does not bar Plaintiff from asking Attorney Moore about the conversation, including what questions she asked. *See also Goettsche Bower v. MetLife Inc.*, No. 1:09-CV-351, 2011 WL 13206046, at *4 (S.D. Ohio June 29, 2011) (finding the work product doctrine does not apply to a conversation). And though Defendants propose that the better course is for Plaintiff to depose Mr. Nagel or else serve on him a subpoena for related written communications, the Federal Rules allow Plaintiff to develop his own discovery strategy. *See, e.g.*, Fed. R. Civ. P. 26(d)(3) (stating the parties may use methods of discovery in any sequence).

In short, Plaintiff may depose Attorney Moore about her communications with Mr. Nagel. Accordingly, Plaintiff's Motion to Compel (Doc. 77) is **GRANTED** to the extent it seeks an order compelling Attorney Moore to attend a deposition.

While this question was relatively straightforward, Defendants have additional concerns.

### C. The Policy Memorandum and Email Correspondence

The Court again notes that the exact nature of questioning Plaintiff intends to pursue at Attorney Moore's deposition is unknown. He implies, however, that he will ask questions about the Policy Memorandum and Email Correspondence. (Doc. 77 at 7–9 (stating Plaintiff is entitled to "inquire into those matters" in Attorney Moore's deposition)). And he argues that because ODRC and Defendants voluntarily produced both documents, they waived any applicable privilege. (*Id.* (asserting that post-production, "ODRC and Defendants cannot now argue that Moore's communications and analysis regarding the produced materials are still privileged so that [Plaintiff] only obtains a cherry-picked portion of the facts")).

8

Defendants preemptively object. Defendants submit that Plaintiff cannot ask Attorney Moore about why she sought out Mr. Nagel, what impressions she formed after her communications with him, or what steps she took to protect the legal interests of ODRC. (Doc. 78 at 11). They say those topics are protected by either the attorney-client privilege between ODRC and Attorney Moore or the work product doctrine. (*Id.*). Similarly, Defendants assert that topics about the Email Correspondence between Attorney Moore and Defendant Wojciechowski are shielded by the same since Wojciechowski sought advice from Attorney Moore prior to her being a named Defendant in this case. (*Id.* at 13–14). In their view, Attorney Moore's email was legal advice to an agent of her client, the ODRC. (*Id.*). And though Defendants in their individual capacity produced the Policy Memorandum and Email Correspondence, they say ODRC itself has not waived any applicable privilege. (*Id.*).

Defendants' assertion that there is blanket privilege over topics related to the Policy Memorandum and the Email Correspondence—which seemingly reinforce one of Defendants' primary defenses—is dubious at best. Defendants produced both documents to Plaintiff. To the extent Defendants argue ODRC holds any privilege rather than the individual Defendants (Doc. 78 at 13–14), ODRC apparently produced the documents to the individual Defendants. Indeed, both documents are marked with "DRC" Bates labels. *Cf. N. Am. Rescue Prods., Inc.*, 2009 WL 4110889, at *8 ("[V]oluntary disclosure of information protected by the [attorney-client] privilege waives the privilege" (citing *In re Grand Jury Proc. Oct. 12, 1995*, 78 F.3d 251 (6th Cir. 1996)); *Cox*, 2019 WL 6711388, at *4 ("A party 'may waive . . . work-product protection 'by conduct which implies a waiver of the privilege or a consent to disclosure.'" (citations omitted)). Defendants have not provided any case support for the capacity distinction they ask the Court to enforce. *Cf. Maday v. Public Libraries of Saginaw*, 480 F.3d 815, 821 (6th Cir. 2007) ("A party waives the attorney-client privilege notwithstanding an error of judgment where the person knows

9

that privileged information is being released but concludes that the privilege will nevertheless survive"); *LifeBio, Inc. v. Eva Garland Consulting, LLC*, 672 F. Supp. 3d 512, 517 (S.D. Ohio 2023) ("[I]f a client wishes to preserve the [attorney-client] privilege, it must treat the confidentiality of attorney-client communications like jewels—if not crown jewels . . . it may be waived by behavior by the client or [ ] [its] attorney [ ] that is inconsistent with the continued maintenance of that privilege." (citations and internal quotation marks omitted)); *cf. also In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d at 302 ("[W]e reject the concept of selective waiver, in any of its various forms.").

Additionally, Plaintiff's point is well-taken that simply because a communication is made or sent by an attorney does not automatically guarantee a privilege applies. (Doc. 79 at 4–5 (citing *Baker v. Chevron USA, Inc.*, No. 1:05-CV-227, 2009 WL 10679629 (S.D. Ohio June 8, 2009))).

All that said, because the Court is allowing Attorney Moore's deposition to proceed anyway, the Court need not draw the specific contours of privileges or waiver at this juncture. Should either issue arise during Attorney Moore's deposition, the parties are **GRANTED** leave to file simultaneous letter briefs, that shall not exceed 10 pages, explaining (1) the question(s) at issue and (2) the party's legal position on why Ms. Moore should or should not be required to provide testimony. The briefs may be emailed to jolson_chambers@ohsd.uscourts.gov. All counsel should be copied.

Additionally, because the Court expects Ms. Moore's deposition to be rather limited in scope based on Plaintiff's Motion, it is **ORDERED** that the deposition shall not exceed three hours. The parties must work together to schedule the deposition expediently.

IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel (Doc. 77) is **GRANTED in part.** Plaintiff is permitted to depose Maragaret Moore for up to three hours.

IT IS SO ORDERED.

Date: December 16, 2025               /s/ Kimberly A. Jolson
                                      KIMBERLY A. JOLSON
                                      UNITED STATES MAGISTRATE JUDGE